# No. 25-20550

# In the United States Court of Appeals for the Fifth Circuit

SILVIA L. CANALES,
*Plaintiff – Appellant,*

*v.*

WAL-MART TEXAS, L.L.C.,
*Defendant – Appellee*

On Appeal from the United States District Court
for the Southern District of Texas, Houston Division

**REPLY BRIEF OF PLAINTIFF-APPELLANT**


Kelly E. Cook
WYLY & COOK, PLLC
1415 North Loop West, Suite 1000
Houston, Texas 77008
Tel: 713.236.8330
Fax: 713.863.8503
kcook@wylycooklaw.com
Lead Attorney for
Plaintiff-Appellant Silvia Canales

## TABLE OF CONTENTS


TABLE OF CONTENTS .......... 1

TABLE OF AUTHORITIES .......... 2

SUMMARY OF THE ARGUMENT .......... 4

ARGUMENTS AND AUTHORITIES .......... 6

I. Canales satisfied the time-notice rule .......... 6

A. There is legally sufficient evidence to show the floor was wet for 75 minutes before Canales fell. .......... 6

B. Texas law does not require that the hazard be visible for a recording to show how long the hazard existed. .......... 8

C. *H-E-B, LP v. Peterson*, does not prevent Canales's reliance on *Brookshire Bros*. .......... 11

D. The evidence shows there was water on the floor. .......... 12

E. Wal-Mart's attempt to distinguish *Brookshire Bros.* fails .......... 13

F. Wal-Mart's remaining arguments are unavailing.. .......... 15

II. Proximity of Wal-Mart's workers and the conspicuousness of the wet floor raise a fact issue on constructive knowledge. .... 17

A. Wal-Mart's argument that the proximity evidence is weak is not supported by the caselaw .......... 18

B. The video and photographic evidence show the wet area was large and visible .......... 18

C. Wal-Mart's cases are distinguishable .......... 20

CONCLUSION .......... 22

PRAYER FOR RELIEF .......... 22

CERTIFICATE OF SERVICE .......... 23

CERTIFICATE OF COMPLIANCE .......... 23

## TABLE OF AUTHORITIES

**Cases** **Page No.**


*Agbonzee v. Wal-Mart Stores Tex., L.L.C. #772,*
No. 21-20395, 2022 WL 3137428 (5th Cir. Aug. 5, 2022)
(unpublished per curiam) ............................................. 10, 18

*Am. Tel. & Tel. Co. v. Delta Communications Corp.*,
590 F.2d 100 (5th Cir. 1979) ............................................. 15

*Avila v. Fiesta Mart, L.L.C.*, No. 14-20-00133-CV,
2021 WL 4270035
(Tex. App.—Houston [14th Dist.] Sept. 21, 2021, no pet.)
(mem. op.) ............................................................ 9–10

*Brookshire Bros., Ltd. v. Aldridge*,
438 S.W.3d 9 (Tex. 2014) ............................................. passim

*Brookshire Food Stores, L.L.C. v. Allen*, 93 S.W.3d 897
(Tex. App.—Texarkana 2002, no pet.) ............................. 21

*Cox v. H.E.B. Grocery, L.P.*, No. 03-13-00714-CV,
2014 WL 4362884
(Tex. App.—Austin Aug. 27, 2014, no pet.) ......................... 10–11

*Cruzco v. Wal-Mart Stores Tex., LLC*,
No. 4:24-CV-02681, 2026 WL 84414
(S.D. Tex. Jan. 12, 2026) ............................................. 15–16

*Esteves v. Lowe's Home Centers, L.L.C.*,
No. 25-40663, 2026 WL 1587514 (5th Cir. June 3, 2026) .... 7

*Granados v. Wal-Mart Stores, Inc.*,
653 Fed. Appx. 366 (5th Cir. 2016)
(unpublished per curiam) ............................................. 5, 19–20

*Guzman v. Allstate Assurance Co.*,
18 F.4th 157 (5th Cir. 2021) .................................................. 12

*H-E-B, LP v. Peterson,*
732 S.W.3d 541 (Tex. 2026) ..................................................11–12

*Jackson v. Wal-Mart, Inc.*,
No. CV H-21-4210, 2022 WL 10128446
(S.D. Tex. Oct. 17, 2022) ...................................................... 8

*Ramirez v. Martinez,*
716 F.3d 369 (5th Cir. 2013).................................................. 16

*Robbins v. Sam's E., Inc.*, No. 21-20050,
2021 WL 3713543 (5th Cir. 2021) ......................................... 20

*Seigler v. Wal-Mart Stores Texas, L.L.C.*,
30 F.4th 472 (5th Cir. 2022) .................................................. 8

*Shirey v. Wal-Mart Stores Texas, L.L.C.,*
699 F. App'x 427 (5th Cir. 2017)........................................... 20

*Threlkeld v. Total Petroleum, Inc.*,
211 F.3d 887 (5th Cir. 2000).................................................. 21

*Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.*,
953 F.2d 985 (5th Cir. 1992).................................................. 17

*Wal-Mart Stores, Inc. v. Reece,*
81 S.W.3d 812 (Tex. 2002) .................................................... 5–8
19–21

## Summary of the Argument

### I. Canales satisfied the time-notice rule.

Wal-Mart argues that Canales failed to satisfy the time-notice rule because the surveillance video doesn't show the water on the floor.[1] In doing so, Wal-Mart ignores controlling Texas Supreme Court precedent.

Even when a hazardous substance itself is not shown, surveillance video showing that no leak or spill occurred during the recording is legally sufficient evidence of how long the substance was on the floor. *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 30 (Tex. 2014).

Here, the existence of the water on the floor was shown by Canales's testimony, her contemporaneous report, and video showing her slipping, another customer slipping, and a third avoiding the wet area.[2] This evidence showed there was water on the floor even if the video did not capture it.

In the 75 minutes before Canales fell, no leak, spill, or other event that would explain where the water came from is recorded.[3] Wal-Mart does not suggest a source of water that could plausibly wet the floor without being seen on the video. Under *Brookshire Bros.*, the wet floor combined with the video's absence of a source for the water constitutes legally sufficient evidence of how long the floor was wet.

---

[1] Appellee's Br. 17.
[2] Appellant's Br. 13.
[3] ROA.363 (9:07:00 a.m.–10:22:01 a.m.).

## II. The evidence shows Wal-Mart had a reasonable time to discover the wet floor.

First, Wal-Mart does not challenge that 75 minutes is enough that it should reasonably have detected the water on the floor. Instead, it argues that the eight minutes between the patron's slip and Canales's fall is, as a matter of law, insufficient.[4] However, eight minutes is longer than was held adequate in *Brookshire Bros.,* 438 S.W.3d at 30.

Wal-Mart also argues the proximity evidence in this case is weak.[5] In *Brookshire Bros.*, the proximity evidence was two instances of workers walking past the spill in the minutes before the fall. 438 S.W.3d at 30. Here, two workers stood where Canales would fall minutes later.[6]

Wal-Mart argues that water on a floor is inconspicuous as a matter of law.[7] But the Texas Supreme Court and this Court evaluate conspicuousness on the facts and do not dismiss clear liquids as inconspicuous as a matter of law. *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814, 816 (Tex. 2002); *Granados v. Wal-Mart Stores, Inc.*, 653 Fed. Appx. 366, 370 (5th Cir. 2016) (unpublished per curiam). To determine conspicuousness, courts look to the color, clarity, and contrast with the floor of the substance, as well as the size of the substance. *Reece*, 81 S.W.3d at 816; *Granados*, 653 Fed. Appx. at 370

---

[4] Appellee's Br. 24.
[5] *Id.* at 26–28.
[6] ROA.363 (10:18:09 a.m.–10:18:30 a.m.).
[7] Appellee's Br. 21, 29.

The video and photographic evidence here show that the wet area was large—up to three feet by four feet—and visible: in the minutes between the workers standing in the area and Canales's fall, a patron notices something on the floor and avoids stepping in a large area.[8]

Because the evidence would allow a reasonable jury to find for Canales on Wal-Mart's constructive knowledge of the water on its floor, the summary judgment in Wal-Mart's favor should be reversed.

## ARGUMENTS AND AUTHORITIES

### I. Canales satisfied the time-notice rule.

Wal-Mart argues that summary judgment was proper because Canales offered no evidence of how long the floor was wet. However, Canales offered evidence that is legally sufficient (*i.e.*, more than a mere scintilla) to show the floor had been wet for over an hour.

#### A. There is legally sufficient evidence to show the floor was wet for 75 minutes before Canales fell.

In *Brookshire Bros.*, the plaintiff fell on a slippery substance on the floor. 438 S.W.3d at 30. The surveillance video did not show any spill or leak during the seven minutes before the fall. *Id.* In conjunction with the proximity and conspicuousness evidence, the Texas Supreme Court held there was legally sufficient evidence to support a constructive notice finding. *Id.* (citing *Reece*, 81 S.W.3d at 814, 816).

---

[8] Appellant's Br. 22–24; ROA.363 (10:18:09 a.m.–10:18:30 a.m.).

Critically, to meet the burden under *Reece*, the evidence must have included "some proof of how long the hazard was there[.]" *Reece*, 81 S.W.3d at 816. As this Court has recognized: "Texas law is clear that imposition of premises liability through constructive knowledge requires temporal evidence, *i.e.*, evidence of how long the hazard existed." *Esteves v. Lowe's Home Centers, L.L.C.*, No. 25-40663, 2026 WL 1587514, at *3 (5th Cir. June 3, 2026).

The only temporal evidence in *Brookshire Bros.* was surveillance video showing no spill or leak during the seven minutes before the fall. 438 S.W.3d at 30. The Texas Supreme Court could conclude that Aldridge met his burden only by finding that the substance's presence at the time of the fall, together with the video's failure to show any leak during the recording, constituted evidence that the hazard had already been on the floor when the video began. That is the only way the evidence could satisfy the time-notice rule's proof of duration requirement.

That logic applies here. The floor was wet when Canales fell.[9] Meanwhile, the video shows no source of that water for 75 minutes beforehand.[10] This is legally sufficient evidence that the floor was already wet when the video began. *Brookshire Bros.,* 438 S.W.3d at 30.

---

[9] Appellant's Br. 17.

[10] ROA.363 (9:07:00 a.m.–10:22:01 a.m.).

### B. Texas law does not require that the hazard be visible for a recording to show how long the hazard existed.

Wal-Mart argues that because the video doesn't show water on the floor, the video could not show water arriving on the floor.[11] It also argues that, "A recording that cannot capture the hazard at all cannot serve as proof of when the hazard appeared."[12]

First, Canales was not required to prove how the water came to be on the floor. As Judge Rosenthal has explained, "the lack of conclusive evidence regarding the origin of a hazard is simply one factor of many that a court must assess, at the summary-judgment stage, in determining whether a reasonable jury might infer constructive notice." *Jackson v. Wal-Mart, Inc.*, No. CV H-21-4210, 2022 WL 10128446, at *6 (S.D. Tex. Oct. 17, 2022) (citing *Seigler v. Wal-Mart Stores Texas, L.L.C.*, 30 F.4th 472, 480 (5th Cir. 2022)).

Nor was she required to establish when the water first appeared. Rather her burden was to offer more than a scintilla of evidence "that the condition existed long enough to give the premises owner a reasonable opportunity to discover it[.]" *Reece*, 81 S.W.3d at 814.

Second, Wal-Mart's suggestion that a recording cannot be temporal evidence unless the hazard itself can be seen on the video conflicts with *Brookshire Bros.*'s facts. There the video was poor quality, the fall was in the background, and the relevant area was "obscured by a table covered

[11] Appellee's Br. 24–25, n.11.
[12] *Id.* at 25, n.11.

with a cloth that extended to the floor." *Brookshire Bros.,* 438 S.W.3d at 29. The substance itself could not be seen on the video. Had the substance been visible on the recording, the high court could have simply said, "the video shows the substance was on the floor for seven minutes." Instead, the court relies on the fact that no spill or leak is seen occurring on the video. *Id.* at 30.

If the *Brookshire Bros.* court could not have inferred that the hazard existed since the start of the recording because the hazard was not visible on video, there would have been no temporal evidence, and the court would have rendered judgment for the store.

In the face of this controlling Texas Supreme Court authority, Wal-Mart relies on cases from Texas's intermediate courts that have required that a hazard be visible on the video for it to be any evidence of how long the hazard was on the floor.[13]

First, Wal-Mart relies on *Avila v. Fiesta Mart, L.L.C.*, No. 14-20-00133-CV, 2021 WL 4270035 (Tex. App.—Houston [14th Dist.] Sept. 21, 2021, no pet.) (mem. op.). There, the intermediate court—without citing or discussing *Brookshire Bros.*—found it was "equally plausible" that two small grapes had fallen to the floor just before the plaintiff slipped on them but were too small and inconspicuous to be captured by the low-resolution, black-and-white surveillance camera. *Id.* at *2.

---

[13] Appellee's Br. 17.

*Avila*, beyond being inconsistent with *Brookshire Bros.,* is distinguishable. Here, the surveillance video is in color, of decent resolution, and has a clear, unobstructed view of the floor.[14] The video's quality is adequate to rule out plausible sources of sudden inundation like a person spilling a drink, shaking an umbrella, or mopping the floor.

Falling grapes, as tiny discrete objects, might be missed by a low-quality video. Water, by contrast, must typically exit a container like a bottle, cooler, or pipe to reach the floor. Water leaving such a container is substantially more conspicuous and likely to be seen on a video. For example, in *Agbonzee v. Wal-Mart Stores Tex., L.L.C. #772*, while the clear liquid could not be seen in the video, the recording showed the likely source: a person appearing to spill liquid from a drink. No. 21-20395, 2022 WL 3137428, at *3 (5th Cir. Aug. 5, 2022) (cleaned up).

Considering the quality and positioning of the surveillance video in this case, it is not "equally plausible" that something invisible made the wet floor mere moments before the fall as it is that the floor was already wet at the beginning of the video.

Wal-Mart also cites *Cox v. H.E.B. Grocery, L.P.*, which, like *Avila*, is a "poor quality" video case that does not cite or discuss *Brookshire Bros.*'s holding. No. 03-13-00714-CV, 2014 WL 4362884, at *3 (Tex. App.—Austin Aug. 27, 2014, no pet.). The intermediate court there

[14] ROA.363.

dismissed the video evidence, calling it speculative, despite citing no authority for doing so. *Id.* Moreover, that holding is inconsistent with *Brookshire Bros.*, which controls.

### C. *H-E-B, LP v. Peterson* does not prevent Canales's reliance on *Brookshire Bros.*

Canales's reliance on *Brookshire Bros.* is not foreclosed, as Wal-Mart suggests, by the recent case of *H-E-B, LP v. Peterson,* 732 S.W.3d 541 (Tex. 2026).[15] Wal-Mart suggests that the court in *Peterson* "emphasized that the dispositive fact" was that multiple employees passed by the large grease spill in the minutes before the fall.[16]

However, *Peterson*'s entire discussion of *Brookshire Bros.* is one sentence: "Thus, in *Brookshire Brothers, Ltd. v. Aldridge*, video footage showing employees repeatedly passing a large grease spill within the five minutes before the plaintiff slipped was some evidence of constructive knowledge." 732 S.W.3d at 547 (citation omitted). *Peterson* cited *Brookshire Bros.* when discussing the indispensable requirement of temporal evidence. *Id.* The reason *Peterson* cited *Brookshire Bros.* was that *Brookshire Bros.* is an example of case *with* temporal evidence. *Id.*

As discussed above, the only temporal evidence in *Brookshire Bros.* was the same kind of evidence Canales relies on here: the presence of a substance and video evidence not showing an event that likely created or

---

[15] Appellee's Br. 19.
[16] *Id.*

deposited the substance. 438 S.W.3d at 30. Far from rejecting this inference from *Brookshire Bros.*, the *Peterson* court cites *Brookshire Bros.* as an example of adequate temporal evidence. 732 S.W.3d at 547.

Nor does *Peterson* involve a claim that the absence of a spill or leak occurring on surveillance video is evidence the hazard was already on the floor. Rather the video in *Peterson* was offered to show when rain had stopped and that no employees had walked the relevant aisle for two hours before the fall. *Id.* at 545. Temporal evidence was absent in *Peterson* because proof of when the rain ended did not show how long the puddle had existed. *Id.* Nor did the fact that the puddle accumulated from a dripping rafter give any indication of how long it was there. *Id.*

**D. The evidence shows there was water on the floor.**

Wal-Mart tries to cast doubt on the existence of water on the floor.[17] But Canales testified that she slipped on water.[18] Her testimony alone is sufficient at the summary judgment stage to establish that there was water on the floor. *See Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 161 (5th Cir. 2021) (noting admissible testimony by a party is sufficient to create a genuine issue of material fact even if uncorroborated).

Her testimony, however, is also well corroborated by other evidence in the record. Immediately after the fall, she reported she slipped on

[17] Appellee's Br. 16.
[18] ROA.258:19–259:2.

water on the floor.[19] The video shows her foot slipping on the wet floor.[20] The recording also shows other patrons slipping on the floor or sidestepping to avoid something on the ground in the same area, both of which provide evidence that the floor was wet.[21]

Additionally, after the fall, the video captures a person placing a cart over the area where Canales fell.[22] A jury could conclude that this person used the empty cart to cover a visibly wet floor, since no other purpose was obvious. Later, a Wal-Mart employee looks at the floor under that cart, takes a photo of the floor, then leaves the cart in place.[23] These actions also suggest that water was visible on the floor under the cart.

**E. Wal-Mart's attempt to distinguish *Brookshire Bros.* fails.**

Wal-Mart seeks to distinguish *Brookshire Bros.* on the facts.[24] But it cannot. Wal-Mart notes that the Texas Supreme Court "found legally sufficient evidence of constructive notice because the record contained concrete temporal and proximity evidence[.]"[25] That's true. But as discussed above, the only evidence of how long the spill was present in *Brookshire Bros.* was the absence of a spill or leak occurring on the video. 438 S.W.3d at 30.

---

[19] ROA.71.
[20] ROA.363 (10:22:01 a.m.).
[21] ROA.363 (10:14:07 a.m.); ROA.363 (10:21:43 a.m.).
[22] ROA.363 (10:23:08 a.m.).
[23] ROA.363 (10:29:56 a.m.–10:37:27).
[24] Appellee's Br. 18.
[25] *Id.*

As discussed above, the same inference applies here, showing that the floor was wet for at least 75 minutes before the fall.[26] Moreover, the video also shows another patron slipping on the wet floor eight minutes before the fall, establishing a secondary minimum duration.[27]

Wal-Mart highlights that in *Brookshire Bros.* there was evidence of proximity: employees walking past the area of the spill twice in the five minutes before the fall.[28] Here, Wal-Mart employees did not just walk past the wet floor but stood in the very area Canales would fall just four minutes later.[29] Moreover, many workers walked through the subject area during the 75 minutes before the fall.[30]

Wal-Mart points out that in *Brookshire Bros.* the spill was so large it could not be cleaned with paper towels.[31] Here, the evidence also showed the wet area was large. A patron avoided a large area, at least two feet by three feet, just moments before the fall.[32] And dirty footprints show that the area was even larger, four feet by three feet or more.[33]

---

[26] *Supra*, Section I.A.
[27] ROA.363 (10:14:07 a.m.).
[28] Appellee's Br. 18.
[29] ROA.363 (10:18:09 a.m.–10:18:30 a.m.).
[30] *See* Appellant's Br. 27–28 (showing timestamps of employees passing near area).
[31] Appellee's Br. 18–19.
[32] Appellant's Br. 22–24; ROA.363 (10:21:43 a.m.–10:21:48 a.m.).
[33] Appellant's Br. 22–24; ROA.380.

Wal-Mart notes that in *Brookshire Bros.* there was testimony that substances should not remain on the ground for more than five minutes.[34] While Canales doesn't have exactly the same testimony, Canales's expert reviewed Wal-Mart policies and described the comparable requirements in them: they "require all associates to be alert, look for hazards and correct the hazards quickly" and "clean up spills [and other slip and trip hazards] immediately[.]"[35] Despite these policies, several workers stand in the area of the hazard or walk near it, yet none of them were on the lookout or corrected the hazard immediately.[36]

**F. Wal-Mart's remaining arguments are unavailing.**

Wal-Mart claims that Canales is relying on res ipsa loquitur to satisfy the time-notice rule.[37] Canales cited *Am. Tel. & Tel. Co. v. Delta Communications Corp.* for the proposition that it is more reasonable to infer that water was already on the floor than that it spontaneously generated. 590 F.2d 100, 102 (5th Cir. 1979). Pointing out that spontaneous generation is not a reasonable possibility is not a res ipsa argument; nor does that case discuss res ipsa at all. *Id.*

Wal-Mart also attempts to distinguish *Cruzco v. Wal-Mart Stores Texas, LLC*, No. 4:24-CV-02681, 2026 WL 84414 (S.D. Tex. Jan. 12,

---

[34] Appellee's Br. 18.
[35] ROA.458–59.
[36] ROA.363 (9:19:42 a.m.–10:18:08 a.m.).
[37] Appellee's Br. 17.

2026).[38] Wal-Mart first suggests that because the substance in that case was opaque, the trial court could "meaningfully talk about" whether the arrival or absence would be at least "potentially observable."[39] But the trial court stated the substance could not be seen in the video. *Cruzco*, 2026 WL 84414, at *5. The court did not discuss whether its arrival would be "potentially visible" because it was opaque nor suggest that the same analysis would not have applied to water. *Id.*

Wal-Mart argues that there was evidence in *Cruzco* of a prior customer slipping, claiming that such evidence is absent here.[40] But the video here shows a customer slipping at 10:14:07 a.m. and another avoiding an area of the floor at 10:21:43 a.m.[41] Wal-Mart dismisses these events, saying the first patron was merely making an "ambiguous gesture" while the other was "simply walking toward the restroom entrance."[42] However, the video does not "blatantly contradict" Canales's claim that it shows one customer slipping and another avoiding something on the floor.[43] Thus, this Court should apply the usual summary judgment standard and view all the evidence in the light most favorable to her. *See Ramirez v. Martinez*, 716 F.3d 369, 375 (5th Cir.

---

[38] Appellee's Br. 20–23.
[39] *Id.* at 20.
[40] Appellee's Br. 21.
[41] ROA.363 (10:14:07 a.m., 10:21:43 a.m.).
[42] Appellee's Br. 23–24.
[43] ROA.363 (10:14:07 a.m., 10:21:43 a.m.).

2013) (reviewing evidence in light most favorable to nonmovant when video did not "blatantly contradict" the nonmovant's contentions).

Wal-Mart also makes a policy argument that allowing an inference that a substance was already on the ground when a video begins based on evidence of substance's presence at the time of a fall along with a recording showing no leak or spill occurring makes it too easy for plaintiffs to provide temporal evidence.[44] Whatever merit there may be to Wal-Mart's policy argument, it must be directed to the Texas Supreme Court. That's because in *Brookshire Bros.*, the Supreme Court endorsed this kind of inference. 438 S.W.3d at 30. Sitting in diversity, this Court applies the law set forth by the Texas high court. *Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992).

## II. Proximity of Wal-Mart's workers and the conspicuousness of the wet floor raise a fact issue on constructive knowledge.

Wal-Mart does not appear to argue that 75 minutes would not be an adequate time for it to detect the water on the floor. Following *Brookshire Bros.*'s logic, that is what Canales has shown. Thus, this Court should reverse the summary judgment and remand.

Wal-Mart argues that eight minutes is not enough.[45] Although, eight minutes is longer than was found to be adequate in *Brookshire Bros.,* 438 S.W.3d at 30.

---

[44] Appellee's Br. 24–25 n.11.

[45] Appellee's Br. 24.

### A. Wal-Mart's argument that the proximity evidence is weak is not supported by the caselaw.

Wal-Mart claims that Canales's evidence of employee proximity to the hazard is weak.[46] In *Brookshire Bros.*, the proximity evidence was workers merely walking past the area twice during the five minutes before the fall. 438 S.W.3d at 30. Here, two workers stood for twenty seconds in the very spot Canales would fall just minutes later.[47] The proximity evidence here is at least as strong as the court found adequate in *Brookshire Bros.*

Wal-Mart cites *Agbonzee*, where the evidence of proximity showed "some employees were on or around the spot where the liquid purportedly was, they were not there for long, and other employees passed by it without stopping or apparently even noticing the liquid." 2022 WL 3137428, at *3. Nevertheless—and contrary to the implication in Wal-Mart's response—this Court found that "the employees' proximity to the spill weighs *in Agbonzee's favor*[.]" *Id.* (emphasis added). The proximity evidence here is similar to *Agbonzee*. Thus, this Court should find that proximity weighs in Canales's favor. *Id.*

### B. The video and photographic evidence show the wet area was large and visible.

Wal-Mart only addresses the size of the wet area once, referring to a "small quantity" of water without any citation to the record.[48] Instead,

---

[46] *Id.* at 27.
[47] ROA.363 (10:18:09 a.m.–10:18:30 a.m.).
[48] Appellee's Br. 19.

Wal-Mart argues "clear liquids on the floor do not create constructive notice."[49] Wal-Mart effectively argues that water is "inconspicuous as a matter of law."[50]

But *Reece* never held that water is inconspicuous as a matter of law; instead, it found there was no evidence the small puddle of clear liquid in that case was conspicuous. 81 S.W.3d at 816. Likewise, this Court has analyzed the conspicuousness of a clear spill, rather than dismissing it as inconspicuous as a matter of law. *Granados*, 653 Fed. Appx. at 370.

Unlike in those cases, and contrary to Wal-Mart's unsupported assertions, there is evidence in this case that the wet area was large and conspicuous. First, the surveillance video shows a customer noticing something on the floor and making a detour around it.[51] A jury could conclude that the wet area was conspicuous because this customer saw it. The large area the customer avoided likewise provides evidence that the wet area was sizable.

There are also photographs of footprints in the wet area.[52] The footprints are in the same area that the customer avoided and suggest an area as large as four feet by three feet was affected.[53] A jury could

---

[49] *Id.* at 29.
[50] *Id.* at 21 (citing *Reece*, 81 S.W.3d at 816).
[51] ROA.363 (10:21:43 a.m.–10:21:48 a.m.).
[52] E.g., ROA.381.
[53] Appellant's Br. 22–24

combine the footprints with the evidence of the patron avoiding the area to conclude the wet area was large and conspicuous.

Wal-Mart misses the point of Canales's use of these photographs. Canales does not argue that the presence of dirty footprints is evidence the floor had been wet a long time, as Wal-Mart asserts.[54] Rather, she used the photos as evidence of how large the wet area was.[55]

Size, as well as color or clarity, is relevant to determining if a substance is conspicuous. *See Reece*, 81 S.W.3d at 816 (noting spill was "not large" and was a "clear liquid"); *Granados,* 653 Fed. Appx. at 370 (spill was "clear" and "not particularly large"). This evidence demonstrates that the wet area here was much larger than the puddle no larger than a medium pizza in *Reece*. 81 S.W.3d at 813.

**C. Wal-Mart's cases are distinguishable.**

Wal-Mart relies on several cases involving short-lived, inconspicuous hazards, but those decisions rest on materially different facts. In *Robbins v. Sam's E., Inc.*, this Court held that ten minutes was insufficient for an inconspicuous piece of fruit near a kiosk. No. 21-20050, 2021 WL 3713543, at *2 (5th Cir. 2021). Likewise, in *Shirey v. Wal-Mart Stores Texas, L.L.C.*, the hazard was an inconspicuous grape. 699 F. App'x 427, 429 (5th Cir. 2017). But here, the hazard was a wet area

---

[54] Appellee's Br. 30.

[55] Appellant's Br. 22–24.

several feet across that was conspicuous enough that a patron saw and avoided stepping in it.[56]

In *Threlkeld v. Total Petroleum, Inc.*, the Court found no constructive knowledge where the plaintiff merely speculated that water in a restroom may have been present for up to forty-five minutes. 211 F.3d 887, 893–94 (5th Cir. 2000). Likewise, in *Brookshire Food Stores, L.L.C. v. Allen*, the issue was that there was no evidence of how long the grapes were on the floor, just that it had to be no more than 15 minutes. 93 S.W.3d 897, 901 (Tex. App.—Texarkana 2002, no pet.). But under *Reece*, a plaintiff must prove the hazard existed "no less than" a specific amount of time, not "no more than." 81 S.W.3d at 816. Here, Canales relies on evidence that the Texas Supreme Court has found raises more than a scintilla of evidence on how long the hazard existed.[57]

Even if limited to the eight minutes, Canales presented evidence from which a reasonable jury could conclude the wet area was large and conspicuous enough to cause another patron to avoid it, while two Wal-Mart employees stood inside the wet area without cleaning or warning customers away.[58]

---

[56] Appellant's Br. 22–24.
[57] *Supra*, Section I.A.
[58] Appellant's Br. 22–26.

## Conclusion

Wal-Mart's arguments are unavailing. It ignores controlling Texas Supreme Court authority that approves the logical inference Canales makes here. It suggests that there is no evidence of water on the floor, when there is testimony, reports, and video evidence. It asks this Court to weigh facts, such as whether the video shows a patron slipping or making a gesture, or whether another customer is avoiding a hazard or simply going to the restroom.

Ultimately, the surveillance video shows the floor remained unchanged for an hour and fifteen minutes before Canales's fall, with no observed source of the water during that time—allowing a reasonable jury to infer the floor was already wet when the recording began. The wet area was sizable and visible, as evidenced by the patron's avoidance maneuver and the photos of wet footprints. Wal-Mart's employees regularly passed through the area and two employees stood and walked in the precise location of the hazard. A jury could reasonably find on this evidence that Wal-Mart should have detected the large, visible, wet area persisting for 75 minutes while in regular proximity of its employees.

Summary judgment was therefore improper.

## Prayer for Relief

For the foregoing reasons, Plaintiff-Appellant Canales respectfully requests that the district court's judgment be *reversed*, and the case *remanded* for trial on the merits.

Submitted by:

s/ *Kelly E. Cook* Date: June 12, 2026
Kelly E. Cook
WYLY & COOK, PLLC
1415 North Loop West, Suite 1000
Houston, Texas 77008
Tel: (713) 236-8330
Fax: (713) 863-8503
kcook@wylycooklaw.com
Lead Attorney
For Plaintiff-Appellant

## CERTIFICATE OF SERVICE

This is to certify that the foregoing instrument has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on June 12, 2026, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

s/ *Kelly E. Cook*
Kelly E. Cook

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), and 5th Cir. R. 32.1, this document contains 4314 words. This document was prepared with Microsoft Word for Microsoft 365.

s/ *Kelly E. Cook*
Kelly E. Cook